```
              IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF KANSAS


JOHN SCHMITT,

                    Plaintiff,

vs.                                      Case No. 13-1129-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

                    Defendant.
```

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff supplemental security income payments.  The matter has been fully briefed by the parties.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On May 8, 2011, administrative law judge (ALJ) Robert J. Burbank issued his decision (R. at 16-28). Plaintiff alleges that he had been disabled since December 7, 2007 (R. at 16). At step one, the ALJ found that plaintiff did not engage in substantial gainful activity since the September 18, 2009, the

application date (R. at 18).  At step two, the ALJ found that plaintiff had the following severe impairments:  degenerative disc disease of the lumbar spine, drug and alcohol abuse, antisocial personality disorder, and a mood disorder (R. at 18). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 19).  After determining plaintiff's RFC (R. at 20), the ALJ determined at step four that plaintiff is unable to perform any past relevant work (R. at 26).  At step five, the ALJ determined that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 26-27).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 27-28).

**III.  Did the ALJ give proper consideration to the medical source opinions?**

Plaintiff alleges error by the ALJ in failing to include certain limitation in the treating source opinions.  The court will therefore review the three medical opinions regarding plaintiff's physical limitations.

On December 22, 2008, Dr. Brewster examined plaintiff and prepared an assessment of plaintiff's physical limitations (R. at 234-241).  Dr. Brewster opined that plaintiff could walk/stand for 6 hours in an 8 hour day with 15 minute breaks every two hours.  Plaintiff had no limitation on sitting or lifting/carrying, and occasional restrictions on stooping (R. at

5

241). The ALJ gave "significant" weight to Dr. Brewster's opinions regarding plaintiff's ability to stand/walk and the lack of manipulative limitations (R. at 22).

A physical RFC assessment was prepared and dated April 15, 2010 by Dr. Siemsen, a non-examining physician (R. at 323-330). Dr. Siemsen opined that plaintiff could lift 50 pounds occasionally and 25 pound frequently, could sit for 6 hours in an 8 hour workday, and could stand/walk for 6 hours in an 8 hour workday (R. at 324). Plaintiff could occasionally climb ladders/ropes/scaffolds, and should avoid concentrated exposure to extreme cold and vibration (R. at 325, 327). The ALJ gave "significant" weight to the opinions of Dr. Siemsen, noting that they are consistent with the evidence of record and are generally supported by the opinions of Dr. Brewster (R. at 24).

Dr. Hinken, who performed surgery on plaintiff's left wrist, opined on March 1, 2011 that plaintiff could never finger, reach or handle with his left hand, should avoid any exposure to vibrations or hazards with his left hand, and cannot lift and/or carry with the left hand. He also opined that if the wrist was painful, plaintiff would need to elevate it above his heart for 10-15 minutes per hour (R. at 444-445). The ALJ gave little weight to his opinions because they were made approximately two months after the wrist injury, and the ALJ stated that these limitations would not be expected to be

6

similarly limiting for 12 months following the injury (R. at 25).

The ALJ opined that plaintiff could perform light work, should avoid concentrated exposure to extreme cold and vibrations, and is limited to simple work with no more than occasional public contact (R. at 20).  As such, the ALJ's RFC findings clearly gave significant weight to the opinions of Dr. Brewster and Dr. Siemsen.

Plaintiff noted that the ALJ failed to assess restrictions on only occasional climbing of ladders/ropes/scaffolds as opined by Dr. Siemsen.  However, SSR 96-9p states that postural limitations on climbing ladders/ropes/scaffolds would not usually erode the occupational base for a full range of unskilled sedentary work.  1996 WL 374185 at *7.  SSR 83-14 states that relatively few jobs in the national economy require ascending or descending ladders and scaffolding.  1983 WL 31254 at *2.  Therefore, the failure to include this limitation in the RFC findings is, at best, harmless error.

Plaintiff also noted that the ALJ failed to assess a restriction for occasional restrictions on stooping, as opined by Dr. Brewster.  However, SSR 83-14 states that to perform substantially all of the exertional requirements of most sedentary and light jobs, a person would need to stoop only occasionally.  1983 WL 31254 at *2; see SSR 96-9p (the ability

7

to stoop occasionally is required in most unskilled sedentary occupations), 1996 WL 374185 at *8.  Therefore, the failure to include this limitation in the RFC findings is also, at best, harmless error.

Dr. Brewster also opined that plaintiff could walk/stand for 6 hours in an 8 hour day, but would need 15 minute breaks every 2 hours (R. at 241).  Although the ALJ noted this opinion by Dr. Brewster (R. at 22), the ALJ, without explanation, did not include this limitation in his RFC findings.

SSR 96-9p explains the Social Security Administration's policies regarding the impact of a RFC assessment for less than a full range of sedentary work.  On the issue of alternating sitting and standing, it states the following:

> An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically. Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded. The extent of the erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand. **The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing.**  It may be especially useful in these situations to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work.

SSR 96-9p, 1996 WL 374185 at *7 (emphasis added).

8

SSR 83-12 discusses the use of the medical-vocational rules as a framework for adjudicating claims in which an individual has only exertional limitations within a range of work or between ranges of work.  One special situation covered in SSR 83-12 is the need to alternate between sitting and standing.  It states as follows:

> **In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing**. The individual may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting. **Such an individual is not functionally capable of doing** either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or **the prolonged standing or walking contemplated for most light work.** (Persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work.)
> There are some jobs in the national economy--typically professional and managerial ones--in which a person can sit or stand with a degree of choice. If an individual had such a job and is still capable of performing it, or is capable of transferring work skills to such jobs, he or she would not be found disabled. **However, most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task**. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will.  In cases of unusual limitation of

> ability to sit or stand, a VS [vocational specialist] should be consulted to clarify the implications for the occupational base.

SSR 83-12, 1983 WL 31253 at *4 (emphasis added).

In the case of Armer v. Apfel, 216 F.3d 1086 (table), 2000 WL 743680 (10th Cir. June 9, 2000), the ALJ found that the claimant was limited to unskilled sedentary work that would allow him to "change positions from time to time." 2000 WL 743680 at *2. The court cited to the language quoted above in SSR 96-9p and held that the ALJ's finding that the claimant would have to change positions from time to time was vague and did not comply with SSR 96-9p. The court held that the RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing because the extent of the erosion of the occupational base will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand. The ALJ's findings also must be specific because the hypothetical questions submitted to the vocational expert (VE) must state the claimant's impairments with precision. Id. at *2-3.

In the case of Vail v. Barnhart, 84 Fed. Appx. 1, 2-3 (10th Cir. Nov. 26, 2003), the ALJ had made RFC findings limiting plaintiff to light work which included a limitation to allow

plaintiff brief changes of position (alternating sitting and standing).  The court stated as follows:

> Furthermore, if an ALJ finds that a claimant cannot perform the full range of work in a particular exertional category, an ALJ's description of his findings in his hypothetical and in his written decision must be particularly precise. For example, according to one of the agency's own rulings on sedentary labor, the description of an RFC in cases in which a claimant can perform less than the full range of work "must be specific as to the frequency of the individual's need to alternate sitting and standing." Social Security Ruling 96-9P, 1996 WL 374185 (S.S.A.) at *7. **Precisely how long a claimant can sit without a change in position is also relevant to assumptions whether he can perform light work.** 20 C.F.R. § 404.1567(b).

84 Fed. Appx. at **4-5 (emphasis added).  The court then held that the ALJ made a critical omission in his analysis by not properly defining how often the claimant would need to change positions.  84 Fed. Appx. at *5.

Finally, in Maynard v. Astrue, 276 Fed. Appx. 726, 731 (10th Cir. Feb. 16, 2007), the ALJ indicated to the VE that the claimant needed a sit/stand option.  After quoting the language of SSR 96-9p, the court held:

> The ALJ's hypothetical does not comply with the emphasized language in the foregoing quotation because it provided no specifics to the VE concerning the frequency of any need Mr. Maynard may have to alternate sitting and standing and the length of time needed to stand. The RFC in the ALJ's hypothetical is therefore flawed as it

11

>     pertains to a sit-stand option, and the VE's
>     response is not a reliable basis for
>     analyzing the erosion of the unskilled
>     sedentary occupational base or the total
>     number of jobs Mr. Maynard can perform... .

In the case of Gutierrez v. Barnhart, 109 Fed. Appx. 321, 326-327 (10th Cir. Sept. 21, 2004), Dr. Sun opined that plaintiff could walk and/or stand for 2 hours at a time up to a total of 6 hours in a workday, and the ALJ accepted that opinion in making his own RFC determination.[1]  The court then stated:

>     Light work requires the ability to stand
>     and/or walk for up to six hours a day, with
>     intermittent sitting during the remaining
>     time, yet plaintiff can neither stand nor
>     walk for longer than two hours at a time
>     before he must switch to another activity.
>     An individual who must vary his standing and
>     sitting more frequently than at scheduled
>     breaks "is not functionally capable of doing
>     either the prolonged sitting contemplated in
>     the definition of sedentary work (and for
>     the relatively few light jobs which are
>     [performed primarily in a seated position])
>     or the prolonged standing or walking
>     contemplated for most light work." Soc. Sec.
>     Rul. 83–12, 1983 WL 31253, at *4 (1983). We
>     cannot say as a matter of law that a person
>     with plaintiff's restrictions has the
>     ability to perform substantially all the
>     occupations existing at the light exertional
>     level or to do so on a sustained and regular
>     basis. See Soc. Sec. Rul. 83–10, *328 1983
>     WL 31251, at *2; Channel v. Heckler, 747
>     F.2d 577, 579–80 (10th Cir.1984) (per
>     curiam).

109 Fed. Appx. 321, 327-328.

---

[1] The court noted that the evidence did not reflect how long plaintiff must perform an alternate activity before he may return to standing or walking. 109 Fed. Appx. 321, 327-328 n.5.

Based on the social security rulings and case law set forth above, the court cannot say as a matter of law that a person who, as opined by Dr. Brewster, can walk/stand for 6 hours in an 8 hour day with 15 minute breaks every 2 hours is able to perform the light jobs identified by the VE.  The VE was not given this limitation before he testified regarding what jobs plaintiff could perform.  In light of the fact that the ALJ gave "significant" weight to the opinions of Dr. Brewster, the ALJ should have either included this limitation in his RFC findings, or provided a legally sufficient basis for not including this limitation in his RFC findings.[2]  Therefore, this case shall be remanded in order to address this issue.

Plaintiff also asserts error by the ALJ in not including the limitations of Dr. Hinken regarding plaintiff's use of his left hand.  The ALJ attached little weight to these opinions because they were made approximately 2 months after the left wrist injury, and would not be expected to last for 12 consecutive months (R. at 25).

Plaintiff bears the burden of proof through step four of the five step evaluation process.  At step five, the burden shifts to the Commissioner to show that the claimant can perform

---

[2] If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.  SSR 96-8p, 1996 WLL 374184 at *7.  Furthermore, when there are conflicting medical opinions, the ALJ must explain the basis for adopting one and rejecting another.  Quintero v. Colvin, 2014 WL 2523705 at *4 (10th Cir. June 5, 2014); Reveteriano v. Astrue, 490 Fed. Appx. 945, 947 (10th Cir. July 27, 2012).

work that exists in the national economy.  <u>Nielson v. Sullivan</u>, 992 F.2d 1118, 1120 (1993).  Plaintiff bears the burden of establishing that he met the duration requirement.  Plaintiff must provide medical evidence that his/her left hand limitations would be expected to last for 12 months.  See <u>Roberts v. Shalala</u>, 66 F.3d 179, 182 (9th Cir. 1995); <u>Corona v. Colvin</u>, 2014 WL 2772404 at *4 (C.D. Cal. June 19, 2014).  In the absence of any medical evidence from plaintiff that his left hand limitations would be expected to last for 12 months, the court finds no error in the ALJ's conclusion that these limitations would not be expected to last for 12 months.  However, on remand, the duration of these limitations may be further addressed.

In light of the fact that this case is being remanded for the reasons set forth above, the court will note one issue not raised by the parties in the hope of forestalling the repetition of avoidable error.  <u>Chapo v. Astrue</u>, 682 F.3d 1285, 1292 (10th Cir. 2012).  Dr. Stern opined that plaintiff had moderate limitations in six areas:

> The ability to understand and remember detailed instructions.
>
> The ability to carry out detailed instructions.
>
> The ability to work in coordination with or proximity to others without being distracted by them.

> The ability to interact appropriately with the general public.
>
> The ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.
>
> The ability to set realistic goals or make plans independently of others.

(R. at 347-348). The ALJ limited plaintiff in his RFC findings to simple work with no more than occasional public contact (R. at 20).

The ALJ gave "significant" weight to the opinions of Dr. Stern (R. at 25). However, the ALJ failed to explain why his RFC findings included only some of the moderate limitations set forth in Dr. Stern's report. On remand, the ALJ must explain why he adopted some of the moderate limitations contained in Dr. Stern's report, but not others. Haga v. Astrue, 482 F.3d 1205, 1207-1208 (10th Cir. 2007); Frantz v. Astrue, 509 F.3d 1299, 1302-1303 (10th Cir. 2007); Wilson v. Colvin, 541 Fed. Appx. 869, 872-874 (10th Cir. Oct. 16, 2013).

**IV. Are the ALJ's credibility findings supported by substantial evidence?**

Plaintiff also asserts error by the ALJ in his credibility findings. The court will not address this issue because it may be affected by the ALJ's resolution of the case on remand after giving further consideration to the medical source opinions, as

set forth above.  See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004).

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 16th day of July 2014, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge